# NO. 25-4206

# In The
# United States Court Of Appeals
# For The Fourth Circuit

**UNITED STATES OF AMERICA,**

*Plaintiff – Appellee,*

v.

**RODNEY JOHNSON,**

*Defendant – Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

_____

**BRIEF OF APPELLANT**

_____

Harry A. Smith, III
JORY & SMITH, LC
10 South Randolph Avenue
P. O. Box 1909
Elkins, WV  26241
(304) 636-3553

*Counsel for Appellant*

# TABLE OF CONTENTS

Page:

TABLE OF AUTHORITIES ................................................................................... ii

STATEMENT OF JURISDICTION ........................................................................1

ISSUES PRESENTED FOR REVIEW ....................................................................1

STATEMENT OF THE CASE ..................................................................................2

STATEMENT OF FACTS .........................................................................................2

      Base Offense Level ...........................................................................3

      Firearm Enhancement .......................................................................5

SUMMARY OF ARGUMENT ..................................................................................8

ARGUMENT ..............................................................................................................9

    Standard of Review ..........................................................................................9

    Discussion of the Issues ...................................................................................9

      I.    The District Court erred when it overruled Johnson's objection to the Probation Officer's conclusion that Johnson's Base Offense Level is 32 .............................................9

      II.   The District Court erred when it overruled Johnson's objection to the Probation Officer's conclusion that he is subject to a two-level Guideline enhancement for possession of a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1) ..................................................................................11

CONCLUSION .........................................................................................................12

CERTIFICATE OF COMPLIANCE .......................................................................14

# **TABLE OF AUTHORITIES**

Page(s):

**Cases:**

***Gall v. United States***,
 552 U.S. 38 (2007)..................................................................................9

***Santobello v. New York***,
 404 U.S. 257 (1971)..............................................................................10

***United States v. Bolton***,
 858 F.3d 905 (4th Cir. 2017)............................................................11, 12

***United States v. Craig***,
 (4th Cir. No. 224-230, decided June 30, 2025)......................................9

***United States v. Gomez-Jimenez***,
 750 F.3d 370 (4th Cir. 2014)................................................................12

***United States v. Johnson***,
 943 F.2d 383 (4th Cir. 1991)................................................................12

***United States v. Manigan***,
 592 F.3d 621 (4th Cir. 2010)............................................................9, 11

***United States v. Savage***,
 885 F.3d 212 (4th Cir. 2018)..................................................................9

***United States v. Warner***,
 820 F.3d 678 (4th Cir. 2016)................................................................10

**Statutes:**

18 U.S.C. § 3231 .............................................................................................1

18 U.S.C. § 3742(a) ........................................................................................1

21 U.S.C. § 841(a) ..........................................................................................1

21 U.S.C. § 841(b) ..........................................................................................1

21 U.S.C. § 846 ......................................................................................................1

28 U.S.C. § 1291 ....................................................................................................1

**Sentencing Guidelines:**

U.S.S.G. § 2D.1.1(a)(5) .........................................................................................2

U.S.S.G. § 2D.1.1(b)(1) ..................................................................................*passim*

U.S.S.G. § 2D.1.1(c)(4) ..........................................................................................2

## STATEMENT OF JURISDICTION

This appeal arises from the District Court's judgment order, entered by the District Court on April 1, 2025. (JA198-205) The District Court sentenced Rodney Johnson ("Johnson") to a term of imprisonment of 188 months and overruled Johnson's two objections to the presentence investigation report ("PSR").

The District Court had jurisdiction over this criminal prosecution pursuant to 18 U.S.C. §3231 for a drug offense alleged under 21 U.S.C. §841(a), 21 U.S.C. §841(b), and 21 U.S.C. §846. This Court has jurisdiction under 28 U.S.C. §1291 and 18 U.S.C. §3742(a). Johnson filed a timely notice of appeal on April 10, 2025. (JA206-207)

## ISSUES PRESENTED FOR REVIEW

Whether the District Court erred when it overruled Johnson's two objections to the PSR. In his first objection (Objection No. 1), Johnson objected to the Probation Officer's conclusion that Johnson's Sentencing Guideline Base Offense Level ("BOL") is 32. In his second objection (Objection No.2), Johnson objected to the Probation Officer's conclusion that he is subject to a two-level Guideline increase for possession of a dangerous weapon pursuant to U.S.S.G. § 2D.1.1(b)(1).

1

## STATEMENT OF THE CASE

On November 8, 2024, Johnson pleaded guilty, without a plea agreement, to three counts of drug distribution and four counts of possession with intent to distribute drugs. On March 31, 2025, the District Court sentenced Johnson to a term of imprisonment of 188 months, followed by a term of three years supervised release. (JA198-205)

The Presentence Investigation Report ("PSR") concluded that Johnson's Total Offense Level was 35. (JA216-217) In so concluding, the Probation Officer determined that Johnson's relevant conduct was 6,526.88 kilograms of Converted Drug Weight, being a BOL of 32, pursuant to USSG §§ 2D1.1(a)(5) and (c)(4). The Probation Officer also concluded that Johnson was subject to a two-level enhancement pursuant to USSG § 2D1.1(b)(1), for possession of a firearm.

Johnson objected to both the BOL of 32, contending that the BOL should be 30, and that the firearm enhancement was inapplicable. Johnson argued in support of these two objections in his sentencing memorandum and during the sentencing hearing. (JA238-242, JA149-186) The District Court, on the record at sentencing, overruled both of Johnson's objections. (JA156-158)

## STATEMENT OF FACTS

Johnson pleaded guilty to seven counts of the multi-defendant, multi-count indictment, without a plea agreement. Johnson admitted that on or about October

2

12, 2023, he was guilty of distributing controlled substances and that on October 15, 2023, he was guilty of possession of controlled substances with intent to distribute.

## *Base Offense Level*

When Johnson entered his plea, the government, by its Assistant United States Attorney, acknowledged that the correct BOL was 30, and that this offense level was agreed upon by counsel prior to the plea hearing:

> Ms. Wesley (AUSA): "And in the plea agreement that was tendered by Government, the Government provided Mr. Smith [Defendant's counsel] what we perceive to be a fair assessment of his relevant conduct at this point in time. * * * I'm pretty certain it put him at a base offense level of 30. But whatever that number is, the Government will maintain that relevant conduct going forward in the proceeding". (JA115)

\* \* \*

> The Court: "And what Ms. Wesley said is there is a base offense for the weight. And I don't know if you found that, Ms. Wesley. I know that you represented to the best of your memory. But you also indicated that whatever it was you said it was in the agreement, that's what you would agree to; correct?"
>
> Ms. Wesley: "That's correct, Your Honor."
>
> The Court: "Is that correct, Mr. Smith? Do you remember it?"
>
> Mr. Smith: "That is correct. It's a converted drug weight a thousand to 3,000, which converts to offense level 30, Your Honor." (JA128)

3

The government provided the following statement for inclusion in the PSR: "Mr. Johnson's relevant conduct falls between 1,000 kilograms and 3,000 kilograms of converted drug weight and he should receive a reduction for acceptance of responsibility"; conduct falling between 1,000 kilograms and 3,000 kilograms results in a BOL of 30. (JA215)

In Johnson's Sentencing Memorandum, he argued:

"It is clear that the government has always claimed that Defendant's BOL is a 30." As noted in Defendant's objection:

1. In a pre-plea phone conversation with Defendant's counsel, on July 2, 2024, AUSA Wesley stated that Defendant's BOL is 30, upon which Defendant and his counsel have relied.

2. During Defendant's plea hearing, on November 8, 2024, the government again stated affirmatively that Defendant's BOL is 30.

3. In the government's version in the PSR (Paragraph 25), the government again confirmed that Defendant's relevant conduct amounted to a BOL of 30." (JA238-239)

At sentencing, Johnson's counsel argued that "the history of this is that there was a proposed plea agreement that stipulated to the base offense level of 30," that Johnson elected not to take the plea agreement, that on July 2, 2024, the government (in a discussion with Johnson's counsel) indicated that, even without a

4

plea agreement, a BOL of 30 was appropriate. (JA149) Johnson's counsel argued that Johnson's plea was premised upon an understanding between counsel that Johnson's relevant drug conduct was a BOL of 30. (JA149)

While neither the Government nor Johnson's counsel challenged the PSR's, BOL 32 calculation, the government did acknowledge that it had calculated the base offense level to be 30 ("a 30 is kind of where I thought it was going to come in"). (JA151)

The Court denied Johnson's Objection No. 1, independently calculating Johnson's BOL to be 32, adopting the conclusions of the PSR. (JA156-158)

The government, when stating that Johnson's offense is a BOL 30 offense, already had access to the D.E.A. lab reports. (JA155) Johnson's plea, and the negotiations and discussions which preceded it, were all premised upon the parties' understanding that this is a BOL 30 case. Any determination to the contrary would undercut the fair negotiations conducted in good faith in this adversarial process.

*Firearm Enhancement*

The PSR states that the firearm enhancement is called for because "a firearm was seized during the search warrant conducted on October 15, 2023, at the Northside Hills Apartment in Morgantown, West Virginia, which was utilized by the drug trafficking organization to store and distribute controlled substances." (JA217) §2D1.1(b)(1) provides for the enhancement if a dangerous weapon "was

5

possessed" by a defendant.  As the facts will show, Johnson did not "possess" a firearm.

The government's version (Paragraph 24 of the PSR) states that a 9mm firearm was "seized from the kitchen." (JA215) The discovery states, more specifically, that the firearm was located in a cabinet to the left of the kitchen sink. In the apartment were six people, including Johnson, who had arrived just minutes before the search.  At the moment of the search, Johnson was in the living room, seated next to a table, his car keys being on the table.  Co-Defendants Bradshear and Peoples were on the living room couch. Mr. Gonzales, Ms. Thompson, and Ms. Fitzgerald were each in separate bedrooms.

Most important as to whether Johnson possessed a firearm is the timing of his entry into the apartment and the start of the search. Johnson's travel was tracked from Philadelphia, Pennsylvania, to Morgantown, West Virginia, by law enforcement.  He walked into the apartment at 11:57 a.m.; just six minutes later, at 12:03 p.m., the search began. Obviously, Johnson had little time for anything except to sit down and drop his car keys on the table.  9mm ammunition was found in one bedroom, and in two places in the kitchen; nothing, however, was found on Johnson's person or in the living room where he was sitting.  It cannot be inferred from the undisputed facts that Johnson possessed a firearm.

6

The Probation Officer contends that the firearm enhancement would not apply when "it is clearly improbable that the weapon was connected with the offense," citing Application Note 11(A) to U.S.S.G. §2D1.1(b)(1). (JA237) Counts 71 through 74 of the indictment, to which Johnson has pleaded guilty, charge three defendants with possession with intent to distribute on October 15, 2023; none are charged with a weapons violation. (JA87-90) As noted above, Johnson, upon arrival at the apartment in Morgantown, entered premises which were occupied, at the time, by five individuals. Considering when Johnson arrived, where he was located at the time of the search, and the location of the firearm and the ammo, it is improbable that the weapon was connected with his offense.

FBI Special Agent Cory Thigpen testified, at the sentencing hearing, about the firearm issue. While he spoke about Johnson's drug involvement in general and about the residence where drugs, the firearm, and Johnson were present when the residence was searched, SA Thigpen did not disagree with the facts as alleged by Johnson. (JA163-172) Six people were in the residence. (JA168) Johnson was in the living room and the firearm was located in a cabinet in a separate room, the kitchen. (JA170) Johnson arrived at the residence six minutes before the search, having just driven there; he was sitting in the living room, next to a table, his car keys lying on the table. (JA170)

7

The Court, in overruling Objection No. 2, found Johnson's "six minute" argument as being well taken, but nonetheless concluded that Johnson's presence, along with the presence controlled substances, the presence of the firearm and the presence of certain U.S. currency, could not support a finding that "the connection between the firearm and the drug trafficking activity" was "clearly improbable." (JA173-174)

## SUMMARY OF ARGUMENT

### I.

The District Court erred when it disregarded the agreement, between Johnson and the government, that Johnson's BOL is 30; that agreement, which was fundamental to Johnson's guilty plea, was placed clearly on the record and Johnson was entitled to rely upon it.

### II.

The District Court erred when it made a factual determination that Johnson was subject to a firearm enhancement; the government failed to meet its burden of proving, by a preponderance of the evidence, that Johnson possessed a weapon in connection with his drug offenses.

8

# ARGUMENT

## *Standard of Review*

In reviewing a district court's application of the sentencing guidelines for reasonableness this Court applies a deferential abuse of discretion standard. ***Gall v. United States***, 552 U.S. 38 (2007). When reviewing a district court's application of a sentencing guideline, this Court reviews factual findings for clear error and legal conclusions *de novo*. ***United States v. Manigan***, 592 F.3d 621 (4th Cir. 2010). ***United States v. Savage***, 885 F.3d 212 (4th Cir. 2018).

## *Discussion of the Issues*

I.  The District Court erred when it overruled Johnson's objection to the Probation Officer's conclusion that Johnson's Base Offense Level is 32.

While it is factually distinguishable, ***United States v. Craig***, (4th Cir. No. 224-230, decided June 30, 2025), provides guidance in the instant case. ***Craig***, in essence, stands for the proposition that a defendant is entitled to rely upon the terms of a plea agreement, Johnson, of course, had no plea agreement, but the government clearly took the position - - before the plea hearing, at the plea hearing, and in its submission to the PSR, that Johnson's BOL is 30. It is also clear that the lab reports for the drugs comprising Johnson's relevant drug conduct were available to the government before the July 2, 2024, discussion with Johnson's counsel, before the November 8, 2024, plea hearing, and before the government's PSR submission. The government, at sentencing, acknowledged the

9

government's continuing position that Johnson's drug relevant conduct amounted to a BOL of 30.

While there appears to be a dearth of precedent which addresses this issue, it appears that fundamental fairness would necessitate that Johnson's BOL be determined to be 30. After all, Jonson understandably relied upon the government's belief that this was a BOL 30 offense.

***United States v. Warner***, 820 F.3d 678 (4th Cir. 2016), citing ***Santobello v. New York***, 404 U.S. 257, 262 (1971), states that "when a plea rests in any significant degree on a promise or agreement of the prosecution, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." While ***Warner***, unlike the instant case, involves an actual written plea agreement, Johnson nonetheless relied upon the government's expressed and repeated belief that his BOL was 30. A noted, *supra,* the government's position was communicated to Johnson's counsel months before the plea, reiterated at the plea hearing, and confirmed in the government's submission to the PSR. As AUSA Wesley stated at the plea hearing, "Whatever that number is [BOL 30], the government will maintain that relevant conduct going forward in the proceedings." (JA115) At the plea hearing, the court emphasized to Johnson, while discussing the guidelines, that there was an agreement - - "…what Ms. Wesley said is there is a base offense level for the weight"; Ms. Wesley then agreed with the Court's statement: "… that whatever it was you said it was in the agreement, that's what

10

you would agree to, correct?" (JA128) While the "agreement" referred to at the plea hearing was, in fact, a ***proposed*** plea agreement, it was the BOL of 30, contained in that proposed plea agreement, which the parties clearly adopted at the plea hearing and which formed an integral part of Johnson's decision to enter his plea.

II.  <u>The District Court erred when it overruled Johnson's objection to the Probation Officer's conclusion that he is subject to a two-level Guideline enhancement for possession of a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1)</u>.

Contrary to the Probation Officer's assessment, Johnson contends that his knowledge and his distance from the firearm ***are factors to be considered***. The Probation Officer also states that Johnson "has not met the burden of proof for disproving the application of U.S.S.G. §D21.1(b)(1) …." Application Note 11(A) to U.S.S.G.§ 2D1.1(b)(1) does not, however, impose upon Johnson the burden of ***disproving*** the application of §2D1.1(b)(1). For the enhancement to apply, "…the government bears the burden of 'proving possession of a weapon in connection with drug activities' by a preponderance of the evidence." ***United States v. Bolton***, 858 F.3d 905, 912 (4th Cir. 2017), quoting ***United States v. Manigan***, 592 F.3d 621, 632 n.8 (4th Cir. 2010). The issue must be determined based upon the facts of this case - - whether Johnson "possessed" a weapon during the commission of the offense, the offense being possession with intent. The facts in the instant case do not support the enhancement.

11

The government argued, at the sentencing hearing, that *United States v. Gomez-Jimenez*, 750 F.3d 370 (4th Cir. 2014), supported the firearm enhancement, contending that it was factually analogous to the case at bar. (JA161-162) *Gomez-Jimenz*, however, is a dramatically different case. In that case, a firearm enhancement was deemed appropriate where a search of a mobile home residence of a defendant (who fled the scene) resulted in the seizure of 8000 grams of cocaine, 700 grams of cocaine base, and $55,000 in cash, along with miscellaneous tools for measuring, storing, and dissolving cocaine. In stark contrast, in Johnson's case the search of the residence yielded 43.69 grams of cocaine, 45.47 grams of cocaine base, 204.78 grams of methamphetamine, 180.4 grams of fentanyl, $5,025 in cash, and one firearm, being located outside Johnson's presence. (JA215-217)

According to *Bolton, supra*, the government must prove "'a temporal and spatial relation', linking the weapon, the drug trafficking activity, and the defendant", 858 F.3d at 912, citing *United States v. Johnson*, 943 F.2d 383, 386 (4th Cir. 1991). Johnson contends that the facts of this case, recited in detail herein, fail to sustain the government's burden of proof as to the requisite relation.

## CONCLUSION

For the foregoing reasons, Defendant-Appellant Rodney Johnson respectfully requests that the judgment of the United States District Court for the Northern District of West Virginia be reversed, and that this action be remanded to

12

the District Court for further proceedings including re-sentencing based upon a BOL of 30 with no firearm enhancement.

Respectfully submitted this 7th day of July, 2025.

/s/ *Harry A. Smith, III*
Harry A. Smith, III
JORY & SMITH, LC
10 South Randolph Avenue
P. O. Box 1909
Elkins, WV  26241
(304) 636-3553

*Counsel for Appellant*

## **CERTIFICATE OF COMPLIANCE**

1. This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    This document contains <u>2,650</u> words.

2. This document complies with the typeface requirements because:

    This document has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

Respectfully submitted this 7th day of July, 2025.

*/s/ Harry A. Smith, III*
Harry A. Smith, III
JORY & SMITH, LC
10 South Randolph Avenue
P. O. Box 1909
Elkins, WV  26241
(304) 636-3553

*Counsel for Appellant*

14